Gen. 287]                                                      287

**PROCUREMENT**

**BOARD OF PUBLIC WORKS – APPROVAL OF CONTRACTS DATED
    "AS OF" AN EARLIER DATE**

May 24, 1993

*The Honorable William Donald Schaefer*
*Governor*

*The Honorable Louis L. Goldstein*
*Comptroller*

*The Honorable Lucille Maurer*
*Treasurer*
*Board of Public Works*

You have requested our opinion as to the legality of two contracts presented for approval to the Board of Public Works ("Board") at the Board's July 22, 1992 meeting. For the reasons stated below, we conclude that the Board could lawfully approve the contracts as presented if it chooses to do so. [1]

**I**

**Background**

The contracts in question are between the Department of Health and Mental Hygiene ("DHMH") and The Johns Hopkins University School of Medicine ("Hopkins"). The contracts, which are funded entirely with federal and private foundation grant monies,

---

[1] This opinion was originally issued in unpublished form on August 10, 1992 as Opinion No. 92-023. Subsequently, the Board approved the contracts. Although our conclusion is unchanged and the Board has long since acted, some passages in the initial opinion were susceptible of misinterpretation. To avert unintended problems, we are withdrawing Opinion No. 92-023 in favor of this published treatment of the issue.

are for the purpose of obtaining studies of the effectiveness of certain programs in improving the birth outcomes of Medicaid recipients.

Hopkins has already begun performance under both of these contracts, and the contracts are dated "as of September 30, 1991" and "as of March 1, 1992," respectively. We are told that DHMH has not executed the contracts by signing them. On the other hand, DHMH did not promptly seek to obtain approvals for the contracts, and the delay in seeking approval coupled with the start of performance by the contractor gave rise to concern that the parties might have been proceeding as if the contracts were already in effect. The record is not entirely clear on this point, however.

The contract dated as of September is for $530,066. Authority for the approval of this contract has not been delegated by the Board. *See* COMAR 21.02.01.04A(a) (delegating approval authority for service contracts "in the amount of $100,000 or less" to the Department of Budget and Fiscal Planning ("DBFP")). Therefore, DHMH "may not enter into" this contract without Board approval. COMAR 21.03.01.

The contract dated as of March is for $56,900. This contract ordinarily would have been subject to DBFP's delegated approval authority; DBFP, however, submitted it to the Board on the view that the contract was either void or, if the Board so determined, voidable, because it violated COMAR 21.02.03.02C(5). This regulation provides in pertinent part as follows: "Any contract required to be submitted to [DBFP] in accordance with this regulation may not take effect unless it has been approved by [DBFP]." Again, the record is not entirely clear but it appears that pre-approval performance by Hopkins may have been the sole basis on which DBFP judged that a regulatory violation had occurred.

## II

### Analysis

We are aware of no provision in the Procurement Law that prohibits approval and subsequent agency execution of a contract dated "as of" an earlier date or where the contractor already has

begun to perform.[2]  Under common law principles, moreover, there is no bar to a contract's taking effect prior to the date of execution. *Canaras v. Lift Truck Services, Inc.*, 272 Md. 337, 349, 322 A.2d 866, 872 (1974); *Brewer v. National Surety Corporation*, 169 F.2d 926, 928 (10th Cir. 1948).  As the Court of Appeals wrote, "The parties [to a contract] may ... provide at the time of its execution that the contract is entered 'as of' an earlier date than that on which it was in fact executed; such agreements are then effective retroactively as of the earlier date and the parties are bound accordingly."  272 Md. at 349.  As noted in Part I above, the contracts at issue are dated "as of" the dates when the work began.  This phrasing is sufficient to obligate the State during the retroactive periods, but only if the contracts are approved.

Thus, a regulatory violation does not occur solely because a contemplated effective date for a contract is earlier than the expected date of approval or execution by the State or because a contractor already has embarked on performance.  In the absence of other facts, a proposed contract with an "as of" effective date or involving performance underway may be acted upon under the procedures normally applicable to contract approval.  COMAR 21.02.

However, to the extent that Hopkins and DHMH had been proceeding as if the contracts already were effective without approval, DHMH's handling of these contracts was inconsistent with the intent of the procurement regulations.  We recognize, in the words of the regulation, that legally DHMH has not "enter[ed] into" the contracts and that the contracts have not "take[n] effect," given that DHMH has not executed them. *See generally Riegel v. Holmes*, 171 N.E.2d 553, 563 (Ohio Ct. Com. Pleas 1960) ("enter into" means to become legally bound).  Nonetheless, the regulatory scheme is intended to give DBFP and the Board the opportunity to consider a services contract before the contracting agency treats the contract as if it already is in force.  Acquiescence in the contractor's undertaking performance while at the same time failing to seek the requisite approval in a timely way may indicate to the approval authority that the agency was not complying with the requirement for approval.

---

[2] Prior to approval, the contractor is at risk that it will not be compensated for work performed.  The contractor may not enforce an unapproved contract.

A purported contract that does not comply with the Procurement Law or its implementing regulations is void. §11-204(b)(1) of the State Finance and Procurement Article ("SF" Article); COMAR 21.03.01.02A. Procedures normally used for contract approval may not be used when the lack of compliance is known to the approval authority. Instead, under SF §11-204(c)(1) and COMAR 21.03.01.03A, the Board may, in its discretion, treat a contract as merely voidable if (i) the parties acted in good faith, (ii) ratification would not undermine the purposes of the Procurement Law, and (iii) the violation was insignificant or did not prevent substantial compliance with the Procurement Law. While judgments about what is void or voidable are for the Board and not the Attorney General, certain facts of which we have been made aware − for example, the desirability of using the federal grant funds promptly for these public health research projects and the unique expertise of Hopkins − coupled with the apparent good faith of DHMH and Hopkins, suggest that a determination of mere voidability would be well within the Board's discretion.[3]

## III

### Conclusion

In summary, it is our opinion that the Board may, in its discretion, approve the contracts with Hopkins as of the dates when Hopkins' performance commenced.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
*Opinions & Advice*

---

[3] COMAR 21.03.01.04 requires the appropriate department head to make an initial determination regarding voidness and voidability, available for review by the Board. Such a determination, which COMAR 21.01.02.01(34) requires be in writing, would presumably set forth the facts relating to the procurement in sufficient detail to allow an informed judgment by the Board.